UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TEOFILINA RUMALDO, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FLEX PHARMA, INC. WILLIAM K. MCVICAR AND JOHN MCCABE,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff Teofilina Rumaldo ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Flex Pharma, Inc. ("Flex Pharma" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1. This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Flex Pharma securities between November 6, 2017 through June 12, 2018, both dates inclusive (the "Class Period"),

seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.  Flex Pharma is a biotechnology company that develops clinically proven products and treatments for muscle cramps and spasms. The Company develops medicines for nocturnal leg cramps, cervical dystonia, spinal cord spasticity, and multiple sclerosis. Flex Pharma serves customers in the United States.

3.  Founded in 2014, Flex Pharma is headquartered in Boston, Massachusetts, and its securities trade on the NASDAQ Global Select Market ("NASDAQ") under the ticker symbol "FLKS."

4.  On August 1, 2017, Flex Pharma announced the initiation of a Phase 2 trial, referred to as the "COMMEND" trial, to evaluate its product candidate FLX-787 with a focus on treatment for amyotrophic lateral sclerosis ("ALS").  On October 16, 2017, Flex announced the initiation of a second Phase 2 trial, referred to as the "COMMIT" trial, to evaluate FLX-787 in patients with Charcot-Marie-Tooth disease ("CMT").

5.  Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Flex Pharma overstated the viability and approval prospects for its product candidate FLX-787 for the treatment of ALS and CMT; and (ii) as a result, Flex Pharma's public statements were materially false and misleading at all relevant times.

6. On June 13, 2018, Flex Pharma announced that it planned to halt both the COMMEND and the COMMIT trials, citing oral tolerability concerns observed in both studies. Flex Pharma further announced that the Company will restructure its organization to reduce costs, including reducing its workforce by approximately 60%, and that Flex Pharma's Board is exploring "strategic alternatives, including the potential sale or merger of the company."

7. On this news, Flex Pharma's share price fell $3.14, or 75.12%, to close at $1.04 on June 13, 2018.

8. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and Section 27 of the Exchange Act.

11. Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b). Flex Pharma's securities trade on the NASDAQ, located within this Judicial District.

12. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

13. Plaintiff, as set forth in the attached Certification, acquired Flex Pharma's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

14. Defendant Flex Pharma is incorporated in Delaware, with principal executive offices located at 800 Boylston Street, 24th Floor - Boston, Massachusetts 02199. Flex Pharma's securities trade on the NASDAQ under the ticker symbol "FLKS."

15. Defendant William McVicar ("McVicar") has served at all relevant times as the Company's President and Chief Executive Officer.

16. Defendant John McCabe ("McCabe") has served at all relevant times as the Company's Chief Financial Officer.

17. The Defendants referenced above in ¶¶ 15-16 are sometimes referred to herein collectively as the "Individual Defendants."

18. The Individual Defendants possessed the power and authority to control the contents of Flex Pharma's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of the Company's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with the Company, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations

4

being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

19. Flex Pharma is a biotechnology company that develops clinically proven products and treatments for muscle cramps and spasms. The Company develops medicines for nocturnal leg cramps, cervical dystonia, spinal cord spasticity, and multiple sclerosis. Flex Pharma serves customers in the United States.

20. On August 1, 2017, Flex Pharma announced the initiation of a Phase 2 trial, referred to as the "COMMEND" trial, to evaluate its product candidate FLX-787 with a focus on treatment for ALS. On October 16, 2017, Flex announced the initiation of a second Phase 2 trial, referred to as the "COMMIT" trial, to evaluate FLX-787 in patients with CMT.

### Materially False and Misleading Statements Issued During the Class Period

21. The Class Period begins on November 6, 2017, when Flex Pharma issued a press release and filed a current report on Form 8-K announcing the Company's financial and operating results for the quarter ended September 30, 2017 (the "Q3 2017 8-K"). In the Q3 2017 8-K, Flex Pharma stated, in part:

> "We are encouraged by the consistently positive impact of FLX-787 across multiple efficacy endpoints related to cramping and the associated pain from our small, exploratory Phase 2 trial in Australian ALS patients that provides the first clinical evidence of effect for our lead candidate in patients with underlying neurological disease. Our development programs are steadily advancing. We have initiated our Phase 2b ALS trial under Fast Track designation, and, more recently, our Phase 2b CMT trial. These two studies, as well as the ongoing exploratory spasticity study in MS in Australia, are expected to yield several important data readouts in 2018," stated Dr. William McVicar, President and CEO of Flex Pharma. "I am also excited to begin testing potential new applications of our chemical neurostimulation technology to address dysphagia, or difficulty swallowing, in ALS, in addition to cramping in renal failure patients during or

5

between dialysis sessions. We expect to begin studying these indications in the next six months."

22. On November 6, 2017, Flex Pharma also filed a quarterly report on Form 10-Q, reiterating the financial and operating results announced in the Q3 2017 8-K (the "Q3 2018 10-Q"). The Q3 2017 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 by the Individual Defendants, stating that the Q3 2017 10-Q "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report" and that "the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report".

23. On March 7, 2018, Flex Pharma issued a press release and filed a current report on Form 8-K announcing the Company's financial and operating results for the quarter and year ended December 31, 2017 (the "2017 8-K"). In the 2017 8-K, Flex Pharma stated, in part:

> "Late last year we achieved an important milestone with the positive data set from a small ALS study which provides the first clinical evidence that FLX-787 is active in patients with underlying neurological disease," stated Bill McVicar, Ph.D., President and CEO of Flex Pharma. "The next 12 months will be transformational for Flex as we expect to report results from a number of larger clinical trials -- first an exploratory spasticity study in MS, followed by two Phase 2 studies in ALS and Charcot-Marie-Tooth patients, with our current cash position taking us to mid 2019."
>
> \* \* \* \* \*
>
> Business Highlights
>
> - Clinical Efforts
>   . . .
>   - In October 2017, the Company initiated a Phase 2 randomized, controlled, double-blinded, parallel design trial in the United States in

6

> patients with Charcot-Marie-Tooth, referred to as the COMMIT trial. The COMMIT trial will evaluate FLX-787 in CMT patients who suffer from painful, debilitating cramps. Patients will be evaluated for changes in cramp frequency as the primary endpoint, with a number of secondary endpoints. The Company expects to report topline data from this study in early 2019.
>
> - In August 2017, the Company initiated a Phase 2 randomized, controlled, double-blinded, parallel design trial in the US in patients with motor neuron disease (MND), focused on ALS, referred to as the COMMEND trial. The COMMEND trial will evaluate FLX-787 in MND patients who suffer from painful, debilitating cramps. The FDA has granted FLX-787 Fast Track designation for the treatment of severe muscle cramps associated with ALS. The Company expects to report topline results from this study by early 2019.

24. On March 7, 2018, Flex Pharma also filed an annual report on Form 10-K, reiterating the financial and operating results reported in the 2017 8-K (the "2017 10-K"). The 2017 10-K contained signed certifications pursuant to SOX by the Individual Defendants, stating that the 2017 10-K "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report" and that "the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report".

25. On May 2, 2018, Flex Pharma issued a press release and filed a current report on Form 8-K announcing the Company's financial and operating results for the quarter ended March 31, 2018 (the "Q1 2018 8-K"). In the Q1 2018 8-K, Flex Pharma stated, in part:

> "The past few months have been particularly rewarding on the clinical front, as we achieved significant milestones with positive data in two serious and distinctly different neurological diseases: MS and ALS. We believe these data demonstrate the clear potential of FLX-787 to reduce painful cramps and spasms in these patient populations," stated Bill McVicar, Ph.D., President and CEO of Flex Pharma. "Fueled by the consistent efficacy demonstrated by FLX-787 against

7

cramps and spasms, and the potential to impact spasticity, I am excited to be driving towards important readouts for our clinical programs over the next year."

Business Highlights

- Clinical Efforts

    - In March, the Company announced positive topline data for FLX-787 from its exploratory Phase 2 trial in MS patients with frequent muscle cramps/spasms and spasticity. FLX-787 at a dose of 19 mg, taken orally twice daily, in a liquid formulation was evaluated in an exploratory Phase 2 randomized, double-blinded, placebo-controlled, cross-over trial in 57 MS patients. In the evaluation of FLX-787 for its impact on MS patients' cramps/spasms and spasticity, pre-specified analyses of the parallel portion of the study showed the following:

        - A statistically significant 27.3% reduction in the frequency of cramps/spasms compared with control (p=0.001)

        - A 1.4 day increase in cramp/spasm-free days per 14 day period compared with control (p=0.046)

        - Clinician-rated improvement in spasticity with FLX-787 treatment was significantly better than control (p=0.010)

        - Treating physicians reported that 7 of 28 (25%) patients on FLX-787 had "Much Improved" or "Very Much Improved" spasticity versus 0 of 26 (0%) on control based upon the Clinical Global Impression of Change in Spasticity

        - FLX-787 was generally well tolerated and resulted in no drug-related serious adverse events. GI-related adverse events (diarrhea and nausea) were infrequently reported with FLX-787.

26.  On May 2, 2018, Flex Pharma also filed a quarterly report on Form 10-Q, reiterating the financial and operating results announced in the Q1 2018 8-K (the "Q1 2018 10-Q"). The Q1 2018 10-Q contained signed certifications pursuant to SOX by the Individual Defendants, stating that the Q1 2018 10-Q "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period

8

covered by this report" and that "the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report".

27. The statements referenced in ¶¶ 21-26 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Flex Pharma overstated the viability and approval prospects for its product candidate FLX-787 for the treatment of ALS and CMT; and (ii) as a result, Flex Pharma's public statements were materially false and misleading at all relevant times.

### The Truth Begins to Emerge

28. On June 13, 2018, Flex Pharma issued a press release entitled "Flex Pharma Announces Corporate Update." The press release stated, in part:

> BOSTON--(BUSINESS WIRE)--Jun. 13, 2018-- Flex Pharma, Inc. (NASDAQ: FLKS), a clinical-stage biotechnology company, today announced that ***the Company is ending its ongoing Phase 2 clinical trial investigations of FLX-787 in amyotrophic lateral sclerosis (ALS) and Charcot-Marie-Tooth (CMT) due to oral tolerability concerns observed in both studies***, in a subset of patients being treated, with the oral disintegrating tablet formulation at 30 mg, taken three times a day.
>
> "In the past few months we have reported positive efficacy data in two serious and distinctly different neurological diseases: multiple sclerosis (MS) and ALS. We believe that these clinical data demonstrate the clear potential of FLX-787 as a symptomatic therapy to reduce painful cramps and spasms in these patient populations," stated Bill McVicar, Ph.D., President and CEO of Flex Pharma. "However, ***recent observations of oral intolerability at the current dose and formulation, in a subset of patients, in both studies, indicate that more formulation and dose-ranging studies are required, which is challenging for the Company based upon our current resources***."
>
> The Company's Board of Directors and its management are in alignment that the Company's best path forward to preserve stockholder value is to focus its

resources on assessing strategic alternatives, including the potential sale or merger of the Company. The Board has established a Strategic Committee that will work with management to oversee this process. Wedbush PacGrow has been engaged to act as the Company's strategic financial advisor. There can be no assurance that this process will result in any such transaction and the Company does not intend to disclose additional details unless and until it has entered into a specific transaction.

The Company will continue to operate with a reduced internal team that will focus their efforts on assessing the potential of FLX-787 in dysphagia (difficulty swallowing) and operating the HOTSHOT consumer business while the strategic review is ongoing.

In connection with these decisions, Flex Pharma will restructure its organization to reduce costs, including reducing its workforce by approximately 60 percent. Most of these changes are anticipated to be completed by June 30, 2018. As a result, the Company expects to realize annualized cost savings beginning in the third quarter of 2018. The Company estimates that it will incur one-time costs of approximately $0.8 million to $1.1 million related to the restructuring plan.

(Emphases added.)

29. On this news, Flex Pharma's share price fell $3.14, or 75.12%, to close at $1.04 on June 13, 2018.

30. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

31. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Flex Pharma securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of

their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

32. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Flex Pharma securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Flex Pharma or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

33. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

34. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

35. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Flex Pharma;

- whether the Individual Defendants caused Flex Pharma to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Flex Pharma securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

36.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

37.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Flex Pharma securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Flex Pharma securities between the time the Defendants failed to disclose or misrepresented

material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

38. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

39. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

40. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

41. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

42. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of

Flex Pharma securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Flex Pharma securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

43. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Flex Pharma securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Flex Pharma's finances and business prospects.

44. By virtue of their positions at Flex Pharma , Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

45. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers

and/or directors of Flex Pharma, the Individual Defendants had knowledge of the details of Flex Pharma's internal affairs.

46. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Flex Pharma. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Flex Pharma's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Flex Pharma securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Flex Pharma's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Flex Pharma securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

47. During the Class Period, Flex Pharma securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Flex Pharma securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff

and the Class, the true value of Flex Pharma securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Flex Pharma securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

48. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

49. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

50. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

51. During the Class Period, the Individual Defendants participated in the operation and management of Flex Pharma, and conducted and participated, directly and indirectly, in the conduct of Flex Pharma's business affairs. Because of their senior positions, they knew the adverse non-public information about Flex Pharma's misstatement of income and expenses and false financial statements.

52. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Flex

Pharma's financial condition and results of operations, and to correct promptly any public statements issued by Flex Pharma which had become materially false or misleading.

53. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Flex Pharma disseminated in the marketplace during the Class Period concerning Flex Pharma's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Flex Pharma to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Flex Pharma within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Flex Pharma securities.

54. Each of the Individual Defendants, therefore, acted as a controlling person of Flex Pharma. By reason of their senior management positions and/or being directors of Flex Pharma, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Flex Pharma to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Flex Pharma and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

55. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Flex Pharma.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.  Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.  Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.  Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.  Awarding such other and further relief as this Court may deem just and proper.

### DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: June 19, 2018

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
       ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**

Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
(212) 697-6484
peretz@bgandg.com

*Attorneys for Plaintiff*